IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

INTEGRSERV LLC,                    )
                                   )
            Plaintiff,             )
                                   )
        v.                         )    Civil Action No. 20-1228
                                   )
EQT PRODUCTION COMPANY,            )
                                   )
            Defendant.             )

## MEMORANDUM OPINION

### I.      INTRODUCTION

Plaintiff Integrserv LLC initiated this action based upon Defendant EQT Production Company's alleged violation of its "right to make and enforce contracts under section 1981(a) of the Civil Rights Act and for breach of contract."   (*See* Docket No. 1 at 1).   Presently before the Court is Defendant's Motion to Compel Arbitration and to Stay Litigation, which is opposed by Plaintiff.   (Docket Nos. 16, 17, 19, 21).   After careful consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Defendant's Motion is granted.

### II.     BACKGROUND

As alleged in the Complaint, Plaintiff is a minority owned business that provides trucking and logistics services to the oil and gas industry.   (Docket No. 1, ¶¶ 5, 27).   Defendant is a natural gas company which employs trucking companies to haul water and drilling mud to and from its drilling sites.   (*Id.*, ¶¶ 6, 7).

On February 8, 2018, Plaintiff and Defendant executed a Master Services Agreement (the

"MSA"), which is attached to the Complaint.   (Docket Nos. 1, ¶ 39; 1-2).   Defendant initially issued Plaintiff a purchase order to provide mud and water hauling services to Defendant for the period from February 11, 2018 to March 14, 2019.   (Docket No. 1, ¶ 40).   On April 4, 2019, Defendant issued Purchase Order No. 14294401, effective from March 15, 2019 to February 10, 2021, to replace the first purchase order.   (Docket Nos. 1, ¶¶ 62, 64; 1-3).

In August 2019, one of Plaintiff's trucks had a rollover accident, and one of its subcontractors discovered that a driver had a handgun in his truck which resulted in his termination.   (Docket No. 1, ¶¶ 77, 78).   On August 22, 2019, Defendant issued a letter to Plaintiff terminating the MSA and Purchase Order No. 14294401 (collectively, the "Contract Documents") for safety violations under section 6.2 of the MSA.   (*Id.*, ¶ 81).   Plaintiff claims that its termination for safety violations was pretext, and the true reason was because of racial discrimination.   (*Id.*, ¶ 116).   Consequently, Plaintiff alleges in Count One of the Complaint that Defendant's termination of the Contract Documents "violated [Plaintiff's] right to be free of racial discrimination under 42 U.S.C. § 1981 of the Civil Rights Act."   (*Id.* ¶ 120).   Plaintiff also alleges a breach of contract claim in Count Two, asserting that "[Defendant's] purported termination of the Contracts was invalid."   (*Id.*, ¶ 142).

Defendant moves to compel arbitration pursuant to the dispute resolution provision in the MSA, and requests that the Court stay this action pending the completion of arbitration.   (Docket Nos. 16, 17).   Plaintiff filed a response opposing Defendant's Motion, to which Defendant replied.   (Docket Nos. 19, 21).   The parties' briefing is now complete and the matter is ripe for disposition.

### III.    LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, establishes a strong federal policy in favor of the resolution of disputes through arbitration.   *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003).   However, this strong federal policy favoring arbitration "does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute."   *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009).   Rather, before compelling a party to arbitrate, a court must determine "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."   *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

When ruling on a motion to compel arbitration, a district court should use either a motion to dismiss or a motion for summary judgment standard.   A Rule 12(b)(6) standard should be used "when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause . . . ."   *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotation marks and citation omitted).[1]   Accordingly, where, as here, "the arbitration clause at issue appears in a contract relied upon in the Complaint, [the court] resolve[s] the motion to compel arbitration under a motion to dismiss standard[.]"   *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014).   Neither party contests the applicability of that standard here.

Under the Rule 12(b)(6) standard, the test is "whether, under any reasonable reading of the pleadings, [the] plaintiff may be entitled to relief."   *Kundratic v. Thomas*, 407 F. App'x 625, 627

---

[1]    Conversely, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question."   *Guidotti*, 716 F.3d at 776   (internal quotation marks and citation omitted).   After limited discovery, the court may entertain a renewed motion to compel arbitration, this time evaluating the motion under the Rule 56 summary judgment standard.   *Id.*

(3d Cir. 2011).   The Court must accept as true the well-pleaded factual allegations and construe them in the light most favorable to the plaintiff.   *McGovern v. City of Phila.*, 554 F.3d 114, 115 (3d Cir. 2009).   Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level," meaning that the claim must be "plausible."   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).   Finally, given that the motion to dismiss standard applies, the Court will "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."   *Guidotti*, 716 F.3d at 772 (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

In accordance with these legal standards, the Court will accept all allegations in Plaintiff's Complaint as true and construe them in the light most favorable to Plaintiff.   In ruling on Defendant's motion to compel arbitration, the Court will consider Plaintiff's Complaint and the dispute resolution provision contained in the MSA attached thereto to determine if any reading of those documents could relieve Plaintiff of the obligation to arbitrate.   *See Parker v. Briad Wenco, LLC*, Civ. No. 18-04860, 2019 WL 2521537, at *2 (E.D. Pa. May 14, 2019) ("[W]hen applying the Rule 12(b)(6) standard to a motion to compel arbitration, courts should examine whether there can be no reading of the Complaint that could rightly relieve Plaintiff of the arbitration provision.") (internal quotation marks and citation omitted)).

## IV.   PLAINTIFF'S CLAIMS MUST BE COMPELLED TO ARBITRATION BECAUSE A VALID AGREEMENT TO ARBITRATE EXISTS AND THE CLAIMS AT ISSUE FALL WITHIN THE SCOPE OF THAT AGREEMENT.

Defendant moves to compel arbitration in accordance with the MSA's dispute resolution provision which provides as follows:

> **18.1 Dispute Resolution.** *Contractor agrees any dispute, controversy or*

> ***claim arising out of or relating to the rights and obligations under the Contract Documents shall be settled upon Company's request in its sole discretion[2] by binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or similar rules.***  Such arbitration shall be held in Allegheny County, Pennsylvania. Contractor agrees to submit to the jurisdiction of the arbitration panel at such venue.  The award rendered by the arbitrator(s) shall be final, and judgment upon the arbitration award may be entered in any court having jurisdiction thereof.  Contractor irrevocably agrees to submit to the exclusive jurisdiction of the Court of Common Pleas of Allegheny County, Pennsylvania or the United States District Court for the Western District of Pennsylvania if the Company chooses to resolve any disputes by litigation. Contractor shall proceed diligently with any undisputed Work under the Contract Documents notwithstanding the existence of any dispute, controversy or claim, and during the pendency of any dispute resolution process as set forth in this Section.   Notwithstanding the foregoing, in the event that Company is sued or subjected to any other action or proceedings relating to Contractor's Work at the Project in any other state or forum, Company shall have the right to join Contractor and prosecute its claims, or any one or more of them, against Contractor in such other suit, action or proceeding.

(Docket No. 1-2 at 23, ¶ 18.1) (emphasis added).

Plaintiff responds that the arbitration provision is too indefinite to be enforced and that the relief requested by Defendant is improper.  (Docket No. 19 at 2-5).  However, if the Court is inclined to grant Defendant's Motion, Plaintiff urges the Court to enter an order specifying that: Defendant shall submit Plaintiff's claims to arbitration administered under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"); Defendant is responsible for initiating the arbitration and paying the filing fee; and arbitrators shall be selected in the manner suggested by Plaintiff in its briefing.  (*Id.* at 7-8).  In reply, Defendant submits that the parties' agreement to arbitrate is sufficiently definite to be enforced, and further advocates that the Court

---

2        Although Plaintiff points out that the arbitration provision is "unilateral and gives [Defendant] the **sole** discretion to invoke arbitration," (Docket No. 19 at 1) (emphasis in original), Plaintiff does not contend that it is unenforceable for that reason.   The Court notes that such argument would be unfounded because "the mere fact that [one party] retains the option to litigate some issues in court, while the [other party] must arbitrate all claims does not make the arbitration agreement unenforceable."  *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir. 1999).

should reject Plaintiff's attempt to rewrite their agreement by requiring Defendant to arbitrate under terms to which it did not agree.   (Docket No. 21 at 2-5).   For reasons that follow, the Court concludes that Plaintiff's claims are subject to arbitration in accordance with the MSA's dispute resolution provision.

### A.  A VALID AGREEMENT TO ARBITRATE EXISTS.

In determining whether Plaintiff's claims must be compelled to arbitration, the Court first considers whether a valid agreement to arbitrate exists.   *Trippe*, 401 F.3d at 532.   To determine whether the parties have agreed to arbitrate, a federal court applies "ordinary state-law principles that govern the formation of contracts."   *Century Indem.*, 584 F.3d at 524 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).   In this case, Pennsylvania law governs the Contract Documents.   (*See* Docket No. 1-2 at 23, ¶ 19.1).   Under Pennsylvania law, contract formation requires: "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration."   *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (citing *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).

Plaintiff does not dispute that the parties intended to be bound by the arbitration provision contained in the MSA, or that it is supported by adequate consideration.   (*See* Docket No. 19 at 3). However, Plaintiff contends that the arbitration provision is too indefinite to be enforced.   (*Id.* at 3-4).   The Court disagrees, and concludes that all three contract formation requirements are satisfied here.

Specifically, as to the indefiniteness argument, Plaintiff does not challenge that the parties *agreed* to arbitrate.   Rather, Plaintiff takes issue with the fact that arbitration is to be conducted in accordance with the AAA's Commercial Arbitration Rules "***or similar rules***."   (Docket No. 19 at

3) (emphasis in original).   Without citing any authority, Plaintiff contends that "[t]his disjunctive makes the arbitration agreement ambiguous and leaves open the question of the arbitration forum, if any, and the rules governing arbitration."   (*Id.* at 4).   Plaintiff additionally complains that the arbitration provision is "silent as to the process for commencement of the arbitration, the number[] of arbitrators, the method for the arbitrator(s)' selection, the allocation of costs for the arbitration, and the applicable procedural rules."   (*Id.*).

Initially, the Court observes that the MSA's dispute resolution provision sets forth, in clear and unmistakable fashion, the parties' agreement to arbitrate.   *See Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019) (citing *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964) (under Pennsylvania law, parties should agree to arbitration "in a clear and unmistakable manner")).   To that end, "[Plaintiff] agrees any dispute, controversy or claim arising out of or relating to the rights and obligations under the Contract Documents shall be settled upon [Defendant's] request in its sole discretion by binding arbitration."   (Docket No. 1-2 at 23, ¶ 18.1).   This plain language leaves no doubt that the parties agreed to binding arbitration, thus the arbitration provision is sufficiently definite to be enforced.

Contrary to Plaintiff's position that the agreement is indefinite because it does not specify the applicable arbitration procedures, the MSA's dispute resolution provision provides that arbitration will be in accordance with the AAA's Commercial Arbitration Rules (or similar rules). Accordingly, those rules will establish arbitration procedures, including the number and selection of arbitrators,[3] the operative rules and the allocation of costs associated with arbitration.

---

3        For this reason, there is no need for the Court to order a method to select arbitrators pursuant to § 5 of the Federal Arbitration Act, 9 U.S.C. § 5, as Plaintiff suggests.   (*See* Docket No. 19 at 5-6).   Section 5 applies if the parties' agreement provides "no method" for selecting an arbitrator, or "if a method [is] provided and [a] party . . . fail[s] to avail [itself] of such method."   9 U.S.C. § 5.

Even if the MSA's dispute resolution provision did not reference the AAA's Commercial Arbitration Rules or similar rules, numerous courts have rejected the argument advanced by Plaintiff that an arbitration agreement is too indefinite to be enforced because arbitration procedures are not spelled out.   *See, e.g., Hall v. Treasure Bay Virgin Islands Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010) (The "mere absence of a provision governing costs in an arbitration agreement is not sufficient to make the agreement unenforceable."); *McCoy v. Buccaneer, Inc.*, Civ. No. 2015-0033, 2020 WL 5096940, at *3-4 (D.V.I. Aug. 28, 2020) (rejecting argument that missing terms concerning selection of an arbitration service, selection of arbitrators, rules to be applied, and who pays the fees are essential terms of an arbitration provision, the absence of which renders the provision invalid); *Solar Leasing, Inc. v. Hutchinson*, Civ. No. 2017-76, 2019 WL 4576262, at *6-7 (D.V.I. Sept. 20, 2019) (rejecting argument that arbitration agreement was deficient because it failed to specify arbitration process, number of arbitrators and manner of their selection); *In re Sprint Premium Data Plan Mktg. & Sales Practices Litig.*, Civ. No. 10–cv–6334, 2012 WL 847431, at *4 (D.N.J. Mar. 13, 2012) (rejecting contention that arbitration provision was invalid due to absence of "language . . . specifying the rules governing arbitration or the arbitration forum, [and] the required qualifications of the arbitrator").   In view of this authority, Plaintiff's indefiniteness argument lacks merit.[4]

Next, the Court is cognizant that "the FAA '*requires* courts to enforce privately negotiated agreements to arbitrate . . . *in accordance with their terms*.'"   *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 181 (3d Cir. 2010) (emphasis in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of*

---

4       Plaintiff's unsupported contention that the arbitration provision's reference to the AAA's Commercial Arbitration Rules "or similar rules" renders the provision indefinite also lacks merit, given that courts have upheld arbitration provisions which do not reference any such rules at all.  *See, e.g., McCoy*, 2020 WL 5096940, at *3 (enforcing arbitration provision providing that any dispute "shall be settled by binding Arbitration"); *Solar Leasing*, 2019 WL 4576262, at *6 (enforcing arbitration provision specifying that "the Dispute will be resolved by binding arbitration at a venue located in St. Thomas, Virgin Islands").

*Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)).   Accordingly, the Court declines Plaintiff's invitation to rewrite the MSA's arbitration provision to which the parties agreed by specifying "a protocol for selection of arbitrators" and providing "other more definitive terms."   (Docket No. 19 at 5).   As discussed, the MSA's dispute resolution provision states that arbitration is to be conducted in accordance with the AAA's Commercial Arbitration Rules or similar rules.   Both parties have cited the AAA's Commercial Arbitration Rules in their briefing papers, which signals their apparent understanding and agreement that those rules (rather than other "similar rules") will apply in the arbitration proceeding to occur in this case.   Nonetheless, to avoid any uncertainty or delay, the Court will order the parties to confer and decide whether arbitration will be pursuant to the AAA rules or some other similar rules.   The agreed upon arbitration rules will then dictate the applicable arbitration procedures, including selection of arbitrators and allocation of costs associated with the arbitration proceeding.

One additional point bears noting concerning the arbitration proceeding.   Plaintiff does not contend, let alone establish, that costs associated with arbitration are an impediment to it vindicating its rights.   *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90, 92 (2000) (observing that the "existence of large arbitration costs could preclude a litigant . . . from effectively vindicating [its] federal statutory rights in the arbitral forum" but requiring party seeking to invalidate arbitration agreement to bear burden of showing likelihood of incurring such costs); *Hall*, 371 F. App'x at 313 (to meet burden, plaintiff "must (1) come forward with some evidence to show the projected fees that would apply to their specific arbitrations, and (2) show the party's inability to pay those costs.") (citations omitted).   Nonetheless, Plaintiff argues that Defendant should be responsible for initiating the arbitration and paying the initial filing fee because it moved to compel arbitration pursuant to the dispute resolution provision in the MSA.

(Docket No. 19 at 7).   Plaintiff does not cite any decisional authority to support this position.

Contrary to Plaintiff's position, Rule 53 of the AAA's Commercial Arbitration Rules provides that "[t]he filing fee shall be advanced by the party or parties making a claim or counterclaim, subject to final apportionment by the arbitrator in the award."   (*See* Docket No. 19-1 at 29).   As one court observed, "[t]he drafters of this Rule could have stated that the filing fee must be advanced by the party demanding arbitration, or by the party exercising his right to arbitration under an enforceable arbitration agreement.   Instead, the drafters specifically chose to place this burden on 'the party or parties making a claim or counterclaim,' and the words 'claim' and 'counterclaim' have special meaning in the context of litigation."   *Briggs v. Nationstar Mortgage, LLC*, Civ. No. 3:15-CV-24, 2016 WL 2644902, at *3 (N.D. W. Va. May 9, 2016); *see also Nation v. Lydmar Revocable Tr.*, 251 So. 3d 784, 791 (Ala. 2017) (observing that nothing in the AAA's Commercial Arbitration Rules "plac[es] the burden to initiate the arbitration process on a defendant that has successfully petitioned a [court] to compel arbitration of the claims asserted against it").   The *Briggs* court determined that such words, as applied there, required the plaintiff to initiate the arbitration process and pay the filing fee.   *Briggs*, 2016 WL 2644902, at *3.   As the court explained, "the Rules allow for the apportionment of filing fees following the conclusion of the arbitration process, [thus] the Court does not find this obligation upon the Plaintiff to be inconsistent with the administration of justice."   *Id.*   The Court finds persuasive the reasoning of *Briggs* and concludes that Plaintiff is responsible to initiate the arbitration process and pay the initial filing fee, at least under the AAA's Commercial Arbitration Rules.

## B. PLAINTIFF'S CLAIMS FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

Finally, the Court considers whether Plaintiff's claims fall within the scope of the agreement to arbitrate, an issue which neither party disputes.   In analyzing the matter, the Court is mindful that there is a presumption of arbitrability and all doubts must be construed in favor of arbitration.  *Santana v. A.L. Recovery, LLC*, Civ. No. 18-16, 2018 WL 3912830, at \*8 (W.D. Pa. Aug. 16, 2018).

In this case, Plaintiff agreed to arbitrate "any dispute, controversy or claim arising out of or relating to the rights and obligations under the Contract Documents. . . ."   (Docket No. 1-2 at 23, ¶ 18.1).   "When phrases such as 'any claim arising out of' appear in an arbitration provision, they are given a broad construction, and typically suggest that a given dispute is within the scope of an arbitration provision."  *Townsend v. Pinnacle Entm't, Inc*. 457 F. App'x 205, 208-09 (3d Cir. 2012) (citation omitted).   Accordingly, the Court concludes that Plaintiff's claims for breach of contract and violation of 42 U.S.C. § 1981 fall within the scope of the arbitration agreement[5] given the provision's broad language and the fact that both claims are based on Defendant's termination of the MSA.

## C. THE CASE WILL BE STAYED PENDING ARBITRATION.

If a court determines that an issue in a case is subject to arbitration, it must stay the proceedings until arbitration is concluded upon request by one of the parties.  *Lloyd v. Hovensa, L.L.C.*, 369 F.3d 263, 269 (3d Cir. 2004); *DCK N. Am., LLC v. Burns & Roe Servs. Corp.*, 218 F.

---

[5]      Federal statutory claims, including those alleging a violation of § 1981, may be subject to arbitration.  *See Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2018 WL 4094959, at \*11 (E.D. Pa. Aug. 28, 2018) (observing that statutory claims may be subject to arbitration); *Cirino v. L. Gordon Holdings, Inc.*, Civ. No. 13–CV–4800, 2014 WL 2880291, at \*3 (E.D. Pa. June 25, 2014) (explaining that claims under § 1981 may be arbitrated); *Cuie v. Nordstrom, Inc.*, No. 05-CV-4771, 2005 WL 2922017, at \*5 (E.D. Pa. Nov. 1, 2005) (finding racial discrimination claims in violation of § 1981 fall within the scope of an arbitration agreement).

Supp. 3d 465, 471 (W.D. Pa. 2016) (citing 9 U.S.C. § 3).   In accordance with Defendant's request, (*see* Docket No. 17 at 9-10), this action will be stayed pending the completion of arbitration.

## V.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Compel Arbitration and to Stay Litigation (Docket No. 16) will be granted.   The parties will be ordered to proceed to arbitration forthwith in the manner they have agreed, and this case will be stayed and administratively closed pending arbitration.   The stay may be lifted by this Court on its own motion or for good cause shown by the parties.

An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:          May 5, 2021

cc/ecf:        All counsel of record